UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURIE LEIGH LAPPIN, | ) | CASE NO. 5:14CV01898 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER AND DECISION** |
| OFFICER MICHAEL GABEL, et al., | ) | |
| | ) | (Resolving Doc. 46, 51) |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant, Officer Michael Gabel. Doc. 51. The Court finds that there are no genuine issues of material fact as to Defendant's qualified immunity protection. As such, for the following reasons, Officer Gabel is entitled to judgment as a matter of law on all federal claims, and Defendant's Motion for Summary Judgment is GRANTED.  All remaining claims are REMANDED to state court.

**I. FACTS AND PROCEDURAL HISTORY**

**A. The Incident**

On the evening of August 2, 2013, Plaintiff Laurie Lappin and her husband were involved in an argument about a birthday party their grandson, J.W., attended.[1] Doc. 48 at 56:16-20. Eventually, Lappin, in an attempt to end the argument, decided to leave their house. Doc. 48 at 94:12-22. However, as Lappin tried to exit the garage in her vehicle, Lappin's husband stood in front of the car in order to prevent her from leaving. Doc. 48 at 90. With the garage door still closed and her husband in front of the vehicle, Lappin then began to pull out of the garage and hit her husband, pinning his leg between the vehicle and the garage door. Doc. 48 at 68, 51-3.

---

[1] Lappin and her husband are the legal guardians of their grandson, J.W. Doc. 48 at 6:2-3.

1

Lappin then exited her car, got into another vehicle, and left the scene of the incident. Doc. 48 at 39:7-23, 69.

Shortly after Lappin left the premises, J.W., who did not witness the incident, called 911 emergency services. Docs. 48 at 59-67; 46-2. J.W. communicated to the police dispatcher that his "Nana" has "gone crazy" and that his grandfather was in pain. In addition, at one point during the 911 call, J.W. indicated that he believed Lappin hit his grandfather with her vehicle and that Lappin had left the home after the incident. Doc. 48 at 59-67.[2]

### B. Pre-Arrest Investigation

Responding to the 911 call as a possible situation of domestic violence, Officers Reilly and Van Fossen, arrived at the Lappin residence, and Officer Gabel, arrived shortly thereafter. Doc. 49 at 23-24. Once at the residence, the officers witnessed Lappin's husband's injuries and damage to the garage door resulting from the collision. Doc. 46-3. The officers then proceeded to interview Lappin's husband. Doc. 49 at 25-28. During the interview, he initially could not say if Lappin hit him intentionally but eventually indicated that the incident was an accident and wished not to sign any complaint. Doc. 49 at 25-28.

---

[2] DISPATCHER: 911, what's your emergency?
J.W.: My Nana's gone crazy. I don't know what happened but my Pap is in the back -- is down here crying.
\*\*\*
DISPATCHER 2: Okay. Hit him with the garage door?
J.W.: I guess. I think she hit him with the car or something. Is your leg broken, Pap? Please just send help over and I'll talk to you about it when you get here.
\*\*\*
DISPATCHER 2: Did she do it intentionally in any way?
J.W.: I do not know. I was not down here at the time. I just heard --
DISPATCHER 2: Okay. Where is she at right now?
J.W.: I do not know. She left in another car.
DISPATCHER 2: Was she intoxicated?
J.W.: I think she's a -- no, no. I don't know.
DISPATCHER 2: What type of vehicle did she leave in?
J.W.: She left in a, what is it? A Chevy.

2

Officer Gabel then called Akron Municipal Assistant Prosecutor, Elisa Hill, in order to get advice on how to proceed. Docs. 49 at 38; 52-2 at 7. Laurie Lappin was employed as a service bailiff with the Akron Municipal Court and at times, worked in the same courtroom as Assistant Prosecutor Hill. Doc. 52-2 at 5-6. Officer Gabel explained his knowledge of the situation and asked if domestic violence charges were authorized. Doc. 49 at 120. Hill declined to give an answer to Officer Gabel's question. She specifically testified that she knew Lappin from work and that they "work a lot together," and as a result, she was not comfortable saying "yes or no to the charges" until she spoke with her supervisor on Monday.[3] Docs. 49 at 120 and 52-2 at 9-10.

After his call with Assistant Prosecutor Hill, it was brought to Gabel's attention that J.W. was in contact with Lappin through text messages. Doc. 49 at 55. Gabel asked for her number and called her cell phone, leaving a voicemail message stating that he needed to talk with her about the incident with her husband. Doc. 49 at 55. Shortly thereafter, J.W. received a text message from Lappin stating "Ya right u probably Lu [sic] have seen me for the last time hang with pap ok/ luv u I'm in big trouble." Doc. 48 at 104, Exh. R, S. Based on this text message, in conjunction with the 911 call and what was witnessed at the Lappin residence, Officer Gabel testified that he then believed Lappin could be suicidal. Doc. 49 at 69-70.

---

[3] Q: Do you recall anything else about the conversation you had with Officer Gabel apart from what you've just testified to?

  A: Yes. He described what happened. He explained that Mrs. Lappin and her husband got into an argument, that she was attempting to leave the home. She was attempting to back out of the garage and somehow Mr. Lappin, he got behind the car.
      I mean, the facts were kind of vague as far as did he jump in front of the car, did he, you know, we didn't really go into details of exactly [sic] facts of the case. He just said that he was hit by the car as Mrs. Lappin was backing out. And at that point I explained to Officer Gabel I know Laurie from work and I'm very, you know, we work a lot together, that I was not comfortable saying yes or no to charges and could we discuss this in the morning with my supervisor. And Officer Gabel agreed that he would wait until Monday to discuss things with Gertrude [Wilms], the chief prosecutor, and we would discuss the case further on Monday. And I just stated I was not comfortable saying yes or no to charges at that time.

Doc. 52-2 at 8-9.

3

### C. Lappin's Arrest

Believing that Lappin may be a threat to herself, Officer Gabel obtained Lappin's location with the help of her cell phone company. Doc. 49 at 67-70. From Lappin's cell phone "ping," Officer Gabel located Lappin at a Best Western hotel when another police officer spotted Lappin's car in the parking lot. Doc. 49 at 89. Officer Gabel went to the Best Western's front desk to confirm that Lappin was a registered guest and to determine her room number. Doc. 49 at 90-91. Officer Gabel entered Lappin's hotel room to perform a "wellness check" and found her in bed under the covers. Doc. 49 at 91-92. He offered her medical assistance as part of the wellness check, which she declined. Doc. 49 at 71. Officer Gabel then arrested Lappin pursuant to O.R.C. § 2919.25 and O.R.C. § 2903.11(A)(2) for domestic violence and felonious assault. Doc. 49 at 94-95.

Lappin was held in the Summit County Jail until the following day when she was released on bond. Doc. 48 at 106-09. The matter was brought before a grand jury, which returned a No Bill. Doc. 52-8.

### D. Litigation: Procedural History

Almost a year later, Lappin filed the underlying action in the Summit County Court of Common Pleas on August 11, 2014 against Officers Gabel and Van Fossen, individually. Doc. 1-2. Defendants removed the action to this Court. The Complaint alleges that Officers Gabel and Van Fossen violated Lappin's Fourth Amendment rights through false arrest and malicious prosecution. Doc. 1-2. Furthermore, the Complaint alleges claims under Ohio law for false arrest and malicious prosecution. Doc. 1-2. Defendants denied the material allegations in Lappin's Complaint and maintain that they are precluded from litigation due to qualified immunity. Doc. 5. On May 8, 2015, Lappin voluntarily dismissed Officer Van Fossen leaving, Officer Gabel as

4

the sole defendant in this case. Doc. 50. Officer Gabel has moved for summary judgment on all claims, along with his qualified immunity defense. Doc. 46, 51.

## II. LAW AND ANALYSIS

### A. Legal Standard

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *Anderson,* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Street v.*

*J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)). It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### B. Qualified Immunity: Constitutional Claims

Qualified immunity protects government actors from liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability…." *Id.* (emphasis in text).

The U.S. Supreme Court has set forth a two-factor test in order to determine whether qualified immunity applies. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first factor is whether a constitutional right has been violated, and the second is whether the right was a clearly established at the time of alleged violation. *Id.* District courts have sound discretion as to which prong of the qualified immunity test is analyzed first. *Pearson*, 555 U.S. at 236.

When determining whether a right is "clearly established," the Supreme Court has held that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) [citations omitted]. Courts must not define "clearly established law" at the high level of generality lurking in a broad argument that cites the "'history and purposes of the Fourth Amendment.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ("The general proposition, for example, that an unreasonable

6

search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The essence of qualified immunity [] is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways." *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012).

### 1. Qualified Immunity: Lappin's Claims for Violation of 42 U.S.C. §1983

Lappin argues that Officer Gabel: 1) unlawfully located her through her cell phone data; and 2) unlawfully entered her hotel room without a warrant and therefore, violated her constitutional rights.[4] Officer Gabel argues that he did not violate her Fourth Amendment rights, but even if he did, Lappin's rights were not clearly-established under the circumstances. Thus, Officer Gabel argues that he protected by qualified immunity.

#### a. Cell Phone Ping

Lappin argues that Officer Gabel's use of her cell phone data without a warrant constituted a breach of her clearly-established Fourth Amendment right to be free from unwarranted search and seizure. Officer Gabel argues that there was no Fourth Amendment violation because she did not have a reasonable expectation of privacy in the data given off by her cell phone. Lappin's argument fails as a matter of law, and Officer Gabel is entitled to qualified immunity.

---

[4] While Lappin did not plead any violations of her Fourth Amendment rights with regard to the cell phone ping and the hotel room entry, these arguments did arise in both of the parties' briefs in support and opposition to Officer Gabel's Motion for Summary Judgment. Furthermore, the cell phone ping and the hotel room entry could arguably fall within the framework of Lappin's false arrest claim. Therefore, this Court will address these arguments on the merits.

In finding that Officer Gabel is protected by qualified immunity, Lappin cannot show that she has a clearly-established constitutional right to be free from warrantless geographic data collection from her cell phone. To the contrary, the Sixth Circuit Court of Appeals has held that a person does not have a reasonable expectation of privacy in broadcasted cell phone data that can be used to track a person's movement when that same information could have been obtained through visual surveillance. *U.S. v. Skinner*, 690 F.3d 772 (6th Cir. 2012) (holding that "pinging" a cell phone, without a warrant, in order to determine suspect's location did not violate suspect's Fourth Amendment rights). No reasonable expectation of privacy exists with cell phone data of this type because police or other public agents could have obtained the same information by following the suspect or by relying on other witnesses to the suspect's movements. *Id.*; *U.S. v. Forest*, 355 F.3d 942, 951 (6th Cir. 2004).

Lappin contends that the cell phone "ping" violated her rights because she was in a private residence (i.e., the hotel); and therefore, visible observation by the public was not available. This argument fails for two reasons. First, although she had a privacy interest while in her hotel room, Lappin's travel from her residence to the Best Western hotel could have been observed by the general public.

Second, Lappin's cell phone "ping" only resulted in a general location. Doc. 49 at 88-90. Contrary to Lappin's argument, the cell phone pinging was not used to find the specific hotel room that she was in. Instead, after using the cell phone data to locate the general area of various hotels, law enforcement began checking for her car at the different hotels until the car was spotted in the Best Western parking lot. Officer Gabel confirmed with hotel staff that she was indeed registered as a guest and asked the manager to open Lappin's room door. Doc. 49 at 88-

8

90. As such, the use of Lappin's cell phone data falls within the Sixth Circuit's ruling in *Skinner* and cannot form the basis of liability.

Consequently, the Court finds that, as a matter of law, Officer Gabel did not violate a clearly-established right when he used her cell phone data to determine Lappin's approximate location. Given this, Officer Gabel is entitled to qualified immunity.

### b. Unlawful Entry into Lappin's Hotel Room

Lappin next argues that Officer Gabel unlawfully entered her hotel room, which later led to her false arrest. Alternatively, even if Officer Gabel's entry into the hotel room was lawful, Lappin argues that Officer Gabel's entry was limited to check on her well-being. Therefore, after she was found to be safe, Officer Gabel was required to obtain a warrant before taking further action.

Absent exigent circumstances a police officer needs a warrant to gain entry onto a suspect's property when making an arrest. *Payton v. New York*, 445 U.S. 573, 583-586 (1980). Exigent circumstances are situations that require immediate action in which any delay to obtain a warrant would cause harm. *U.S. v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990). Generally, four situations qualify as exigent circumstances: 1) hot pursuit of a fleeing felon; 2) imminent destruction of evidence; 3) the prevention of suspect's escape; and 4) a risk of danger to police or others. *U.S. v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996).

In order to determine if an exigent circumstance exists, "the court must objectively consider the totality of the circumstances" facing the officer. *U.S. v. Johnson*, 9 F.3d 506, 508 (6th Cir. 1993) (quoting *U.S. v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)). As long as an exigent circumstance objectively exists, the officer's motivation for entering the premise is irrelevant. *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008) (citing *Brigham City, Utah v. Stuart*, 547

9

U.S. 398, 404 (2006)). Whether an exigent circumstance exists regarding a warrantless entry is generally a question for a jury unless the underlying facts are undisputed and the finder of fact could only reach one conclusion. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992).  "Even if the officers' belief that someone within [a residence] could be in danger is a close question, officers are entitled to the benefit of the doubt under the qualified immunity standard."  *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996).

Here, a finder of fact could only reach one conclusion and that is, that Officer Gabel's actions are protected from liability under qualified immunity.  Lappin can point to no clearly-established right that was violated when Officer Gabel entered the hotel room to inquire as to Lappin's well-being due to concern that she might commit suicide or otherwise do harm to herself.  In evaluating the totality of the circumstances known to Officer Gabel at the time of the incident, these facts are undisputed:

1) Lappin and her husband were engaged in an emotional domestic dispute.  She decided to leave their home and got into her car, which was in the garage.

2) The windshield of Lappin's car was facing the garage door opening, giving her a view of the garage door and any other object in front of her car.  She then shifted her car to move forward striking her husband, pinning him between the car and the garage door.

3) When she struck her husband with the vehicle, she was in the driver's seat facing the garage door opening and any other object in front of her car.  Lappin not only struck her husband with the car but also hit and dented her garage door.

4) Lappin then exited her vehicle, retrieved keys for another car sitting in the driveway and fled the scene. She did not call an ambulance or other emergency personnel to attend to her husband who had been injured to the point of leaving blood on the floor, visible to the police when they arrived on the scene.

5) The incident with Lappin's husband was severe enough to prompt her 12 year-old grandson to call 911 emergency services in a panicked state.

6) After fleeing the scene, Lappin sent this text message to her grandson:

Ya right u probably Lu [sic] have seen me for the last time hang with pap ok/ luv u I'm in big trouble.

It is clear that Lappin's text message stated that she would probably not see her grandson again and left him with parting words indicating she loved him. Apart from the potential of self-harm, to an objective viewer, there would be no other reason to burden a 12 year-old child with an emotional goodbye and a declaration that he might not see her again. Given the totality of the circumstances known to Officer Gabel, including the emotional text message, a fact finder could only be left with the single conclusion that Officer Gabel understood that Lappin presented a threat of self-harm and therefore exigent circumstances existed to enter the hotel room without a warrant.

Even assuming Lappin's behavior did not give rise to an exigent circumstance, Officer Gabel's actions are still protected under the second prong of qualified immunity because his actions did not violate clearly-established law. Lappin has presented no case law to establish that it would be clear to a reasonable officer that his conduct was unlawful in the situation that Officer Gabel confronted. *Saucier v. Katz*, 533 U.S. 194, 202, *superseded on other grounds* ("relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

11

confronted."); *see also Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[A]s we explained in *Anderson*, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").  As such, Officer Gabel is entitled to qualified immunity.

Lappin argues only that Officer Gabel was incorrect in his assessment of her likelihood to commit suicide.  Doc. 52 at 14.  She asserts that Officer Gabel feigned concern for her well-being in order to manufacture a reason to enter the room.  Lappin then argues that she has sufficiently created a genuine issue of material fact as to the Officer's motives and belief that exigent circumstances really existed.  Lappin's argument is without merit.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (finding "[officer's] subjective beliefs about the search are irrelevant") (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982)). Here, even if it were a close question as to whether Officer Gabel's belief that Lappin could be a danger to herself, the Sixth Circuit Court of Appeals directs this Court to give the "benefit of the doubt" to Gabel under the qualified immunity standard. *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996) ("Even if the officers' belief that someone within could be in danger is a close question, the officers are entitled to the benefit of the doubt under the qualified immunity standard") (*citing Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (per curiam) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent and those who knowingly violate the law'" [citations omitted])).

"Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts

12

will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." *Id.* at 206 (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

Lappin points to no clearly-established law that was violated by Officer Gabel. As such, even if it were a close question as to whether Gabel had sufficient circumstances to believe Lappin was in danger, Officer Gabel is still entitled to the benefit of the doubt under the qualified immunity standard. *Hunter*, 502 U.S. at 229. As such, no genuine issue of material fact exists as to Lappin's claim for unlawful entry into her hotel room, and Officer Gabel is entitled to immunity as a matter of law.

### 2. <u>Qualified Immunity</u>: Lappin's Claim for False Arrest

Lappin also contends that even if Officer Gabel lawfully entered her hotel room, the scope of the entry was limited only to the "wellness check" and that Officer Gabel would be required to leave the room and obtain a separate warrant in order to arrest her. An arrest violates the search and seizure provision of the Fourth Amendment when an arrest is made without a warrant and without probable cause. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). It is undisputed that Officer Gabel did not have a warrant when he arrested Lappin. As such, the issue turns on whether he had probable cause at the time of the arrest.

### <u>Probable Cause</u>

"A police officer having probable cause to believe that a criminal offense has been committed may make a warrantless arrest without offending the Fourth Amendment." *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012). The validity of an arrest is not dependent on whether the suspect actually committed a crime. *Brooks v. Rothe*,

13

577 F.3d 701, 706 (6th Cir. 2009). "For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (*quoting Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)).

"[T]he Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect…The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty…a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *U.S. v. Strickland,* 144 F.3d 412, 415-16 (6th Cir. 1998) [citations omitted] (emphasis in text); *Scott v. City of Bexley*, 11 Fed.Appx. 514, 518 (6th Cir. 2001). "[W]hile officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *Strickland*, 144 F.3d at 415-16; *see also Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (probable cause exists when facts within the knowledge of the officer warrant a prudent person of reasonable caution to believe that the suspect has committed or is about to commit an offense). "Generally, the existence of probable cause represents a jury question unless there is only one reasonable determination possible." *Id.* (*citing Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

In this case, a reasonable officer in Gabel's position could conclude that probable cause existed to arrest Lappin for domestic violence and felonious assault. Officer Gabel witnessed

blood smears at the residence where a person was reported as having "gone crazy" by the 911 caller, hit and injured her spouse with her vehicle, and then proceeded to flee the scene of the incident. Furthermore, Officer Gabel was made aware of evidence that Lappin hit her husband while the garage door was blocking her exit, giving a possible indication that Lappin acted with the intent to strike her husband. Officer Gabel then witnessed a text message sent by Lappin to her grandson indicating that she was in "big trouble" and appeared suicidal. Looking at the totality of these circumstances, these facts would indicate to a reasonable person that there was probable cause to arrest Lappin for domestic violence and felonious assault.

Even if probable cause did not exist, Officer Gabel is still protected under the second prong of qualified immunity. Lappin cannot direct this Court's attention to any clearly-established law that would have specifically prohibited Lappin's arrest under these facts and circumstances. To the contrary, Ohio's "preferred arrest" policy regarding domestic violence, coupled with the Sixth Circuit's decision in *Thacker v. City of Columbus,* would support Lappin's arrest at the time of the incident. Pursuant to O.R.C. § 2935.03(B)(3)(b):

> …a peace officer has reasonable grounds to believe that the offense of domestic violence or the offense of violating a protection order has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, **it is the preferred course of action in this state that the officer arrest and detain that person** pursuant to division (B)(1) of this section until a warrant can be obtained.

*Id.* (emphasis added). "Specifically, not only does R.C. 2935.03(B)(3)(b) state that a warrantless arrest is 'the preferred course of action' in domestic violence offenses, but R.C. 2935.03(B)(3)(c) also *requires* an officer who does not comply with the preferred arrest policy to 'articulate in the written report of the incident * * * a clear statement of the officer's reasons *for not arresting and detaining that person* until a warrant can be obtained.'" *State v. O'Neill*, 29 N.E.3d 365, 371

15

(Ohio App. 3d Dist. 2015) *appeal not allowed,* 37 N.E.3d 1249 (Ohio 2015) *reconsideration denied,* 40 N.E.3d 1181 (Ohio 2015) (*citing* O.R.C. § 2935.03(B)(3)(b)) (emphasis in text).

As the Sixth Circuit set forth regarding Ohio's preferred arrest policy, "[f]or probable cause to arrest [the defendant] to exist here, the officers would not have to have proof of each element of a domestic violence offense, but would have to believe that a probability existed that he committed the offense." *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003) As noted above, the police received an emergency 911 call from Lappin's grandson who was emotionally distraught about Lappin striking her husband with a vehicle. When Officer Gabel arrived on the scene, he witnessed blood on the floor, Lappin's husband with a leg injury, and the undisputed fact that Lappin did indeed strike him. The dent in the garage door indicated it was down when she moved her vehicle forward and struck her husband. She then fled the scene without calling for emergency medical assistance to help her husband whom she just hit with her car.

Under O.R.C. §2935.03(B)(3)(b), these facts form reasonable grounds to believe that the offense of domestic violence had occurred, making arrest the preferred course of action by law. Even if the question of probable cause to arrest here was arguably a close one, where reasonable officials could disagree as to whether probable cause existed, an officer is entitled to qualified immunity. *Id.* at 260 (*citing Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002) ("Immunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights.").

Lappin argues a dispute of material fact exists as to probable cause and whether Officer Gabel violated clearly-established law in arresting her without probable cause. Lappin's argument centers on: 1) her husband subsequently stating that Lappin's actions were accidental;

16

2) Lappin's deposition testimony that she took additional steps to determine her husband's condition after striking him and that she and her grandson had their own "language" through which the text message should have been read; and 3) Assistant Prosecutor Hill could not reach a conclusion on whether to prosecute Lappin at the time Officer Gabel called her. This argument fails to create a genuine dispute of material fact.

The law allows an officer to use all facts and circumstances within the officer's knowledge sufficient to warrant a reasonable person to believe that the suspect has committed a crime. *Crocket*, 316 F.3d at 580. In domestic violence situations, the victim is often hesitant to participate in the prosecution of the suspect. *State v. Pruiett*, 2004-Ohio-4321, ¶ 19 ("We do note that many times in domestic violence and assault cases, the victims are hesitant to act against their attacker out of fear"). Simply because an apparent victim of domestic violence later states that it was "an accident" does not abrogate the probable cause for arrest that existed from the facts and circumstances observable by Officer Gabel.

Next, Lappin argues that she took certain steps before the police arrived, which demonstrate that striking her husband with the car was an accident and that she checked on his condition before leaving the home to "diffuse" a volatile situation. Furthermore, she argues that she and her grandson have their own "language" and that, when reading the text message through the filter of the language, it would have been clear that she was neither suicidal nor guilty of assaulting her husband. Even assuming these facts are true, Lappin cannot establish that Officer Gabel knew of these facts prior to arrest. To the contrary, the record reflects that these facts only surfaced after arrest, including at her deposition in this lawsuit. If Lappin had wanted to further explain these facts to Officer Gabel, she could have remained at the residence after hitting her husband with a car so that she could clarify the events of the evening.

17

Lastly, Assistant Prosecutor Hill's phone conversation is irrelevant to the question of whether probable cause existed. At no time did Hill say that probable cause did not exist to arrest Lappin. The role of a prosecutor considering whether she could secure a conviction under the standard of "beyond a reasonable doubt" is different from the role of a police officer determining probable cause under a preferred-arrest domestic violence statute. It is undisputed that Hill was not involved in the investigation. As such, her deferral to a supervisor does not indicate that probable cause did not exist.

Therefore, for the above reasons, Lappin cannot demonstrate that a genuine dispute of material fact exists surrounding her constitutional claim for false arrest.  Officer Gabel is protected under qualified immunity.

### 3.  Qualified Immunity: Lappin's Claim for Malicious Prosecution

For a plaintiff to prevail on a malicious prosecution claim under the Fourth Amendment, there must be a criminal prosecution against the plaintiff that was made or influenced by the defendant, which lacked probable cause. *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010). Since probable cause and qualified immunity have been established as discussed above, Lappin cannot demonstrate a genuine issue of material fact as to an essential element of a malicious prosecution claim. *Thacker,* 328 F.3d at 259 ("Because [plaintiff] cannot show the absence of probable cause, [he] cannot demonstrate any seizure in violation of the Fourth Amendment.  Thus, we need not attempt to enunciate the other elements of a malicious prosecution claim here.").  As such, Officer Gabel is entitled to qualified immunity and to judgment as a matter of law.

**C. Lappin's State Law Claims**

"It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise jurisdiction over state law claims." *Gaff v. FDIC,* 814 F.2d 311, 319 (6th Cir. 1987). Because this Court finds summary judgment appropriate on all of Lappin's federal claims, the Court hereby declines to exercise jurisdiction over the remaining state law claims and REMANDS the remaining causes of action to state court.

## IV. CONCLUSION

Reviewing the facts in a light most favorable to the Plaintiff, Laurie Lappin, no genuine dispute of material fact exists regarding her federal claims. Thus, a jury could only reach one conclusion – that is, Defendant Gabel is immune from liability as a matter of law. Therefore, Officer Gabel is entitled to summary judgment on all claims, and his motion for judgment as a matter of law on all federal claims is GRANTED. The remaining claims are hereby REMANDED to state court for further decision.

IT IS SO ORDERED.


DATE: March 31, 2015 /s/ *John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT